[No. C018351. Third Dist. Mar. 4, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER FRANCIS RAY, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of parts II, III, and IV.

**COUNSEL**

James H. Dippery, Jr., for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DAVIS, Acting P. J.**—A jury convicted defendant of possessing counterfeiting apparatus (Pen. Code, § 480 [subsequent undesignated section references are to this code]), possessing materials with intent to make a destructive device (§ 12312), and possessing an explosive device (Health & Saf. Code, § 12305). The jury also found defendant was armed with a firearm in the commission of these offenses. (§ 12022, subd. (a).)

Sentenced to state prison, defendant contends (1) the evidence is insufficient to support his conviction for possessing counterfeiting equipment, (2) the court erred in denying his motion to suppress evidence seized pursuant to a search warrant (§ 1538.5), (3) the evidence is insufficient to support his conviction for possessing materials with the intent to make a destructive device, and (4) the information was improperly amended beyond the statute of limitations to charge him with possessing an explosive device. We shall affirm. In the published part of the opinion we hold that the term "bills" used in section 480 includes "Federal Reserve notes."

### FACTS

On May 23, 1990, pursuant to a warrant, officers searched defendant's residence in Shingletown. In a loft they found a color photocopy machine and photocopies of Federal Reserve notes in $20 and $100 denominations. Some of the notes had been altered to display pornographic pictures. On the floor of the loft the officers found a plastic bag containing fireworks and other pyrotechnic devices. On a table in the loft they found a six-inch length of "PVC" pipe with black electrical tape wrapped around one end. Also on the table were wax plugs, one of which had a "hobby fuse" through it. On a shelf downstairs, they found a bullet casing containing a blasting cap. They also found numerous firearms in the residence.

Shasta County Deputy Sheriff Ricky Slocum, an expert in explosive devices, testified the defendant possessed the materials found in the loft for the purpose of making a pipe bomb.

Frank Quigley, a United States Secret Service agent specializing in counterfeit currency, testified that some of the bills were passable. Because of the reproduction techniques used in practice runs, coupled with attempts to change the serial numbers, Quigley believed the defendant meant to pass the bills.

A few days after the search of defendant's residence, California Highway Patrol Officer Robert Bond served defendant with asset forfeiture papers.

Defendant told Bond he had made the bills and passed some of them in the Shingletown area.

Defendant testified, admitting he photocopied the Federal Reserve notes, but claimed his purpose was to make play money for his children. He made the pornographic bills as a joke for himself and his friends. Defendant claimed he was unaware of the nature of the blasting cap.

## DISCUSSION

### I

Section 480 provides: "Every person who makes, or knowingly has in his possession any die, plate, or any apparatus, paper, metal, machine, or other thing whatever, made use of in counterfeiting coin current in this state, or in counterfeiting gold dust, gold or silver bars, bullion, lumps, pieces, or nuggets, or in counterfeiting *bank notes or bills*, is punishable by imprisonment in the state prison for two, three or four years; and all such dies, plates, apparatus, paper, metal, or machine, intended for the purpose aforesaid, must be destroyed." (Italics added.)

In addition to instructing the jury on the elements they must find in order to convict defendant of this offense, the court instructed the jury that "As used in these instructions, the words 'bank notes' or 'bills' include Federal Reserve notes."

 Defendant contends the evidence is insufficient to support his conviction of violating section 480 because the statute does not prohibit counterfeiting Federal Reserve notes. He argues the phrase "bank notes or bills" does not include Federal Reserve notes. If defendant is correct, then the evidence is insufficient to support his conviction under this section because the only evidence offered was that he counterfeited Federal Reserve notes. Additionally, if defendant is correct, the court erred by instructing the jury that "bank notes or bills" include Federal Reserve notes. However, defendant is not correct in either assertion.

Since section 480 does not expressly prohibit counterfeiting of Federal Reserve notes, our task is one of statutory construction. We conclude that the term "bills" does include Federal Reserve notes, and therefore the evidence is sufficient to support defendant's conviction under section 480.

 In construing a statute, ". . . our primary task is to ascertain legislative intent, giving the words of the statute their ordinary meaning. [Citations.] The words, however, must be read in context, considering the nature

and purpose of the statutory enactment. [Citations.]" (*Nahrstedt* v. *Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378-379 [33 Cal.Rptr.2d 63, 878 P.2d 1275].)

As originally enacted in 1872, section 480 was identical to its present form except for the triad term of imprisonment. (*People* v. *Clark* (1992) 10 Cal.App.4th 1259, 1265 [13 Cal.Rptr.2d 209].) The intent of the statute is to prevent fraud in the passing of counterfeit forms of gold, silver, and bank notes or bills by prohibiting the possession of apparatus intended for such purpose.

■ The term "bills" as used in section 480 refers to "our paper currency." (*People* v. *Bedilion* (1962) 206 Cal.App.2d 262, 269 [24 Cal.Rptr. 19].) The issuance of Federal Reserve notes is governed by 12 United States Code section 411.[2] The purpose behind the federal statute is to make clear that Federal Reserve notes are authorized currency of the United States. (*Provenza* v. *Comptroller* (1985) 64 Md.App.563, 568 [497 A.2d 831, 833-834].) Here, the term "bills" used in section 480 must be construed to include "Federal Reserve notes."

Additional support for this construction of section 480 follows from other well-established rules: "In interpreting legislative enactments, 'we indulge in a presumption that constitutional and legislative provisions were not intended to produce unreasonable results. [Citation.]' (*Barber* v. *Blue* (1966) 65 Cal.2d 185, 188 [52 Cal.Rptr. 865, 417 P.2d 401].) 'Where a statute is susceptible of two constructions, one leading to mischief or absurdity, and the other consistent with justice and common sense, the latter must be adopted. [Citations.]' (*Lampley* v. *Alvares* (1975) 50 Cal.App.3d 124, 128-129 [123 Cal.Rptr. 181].)" (*Shoemaker* v. *Myers* (1992) 2 Cal.App.4th 1407, 1424 [4 Cal.Rptr.2d 203].)

The issuance of "bank notes or bills is generally forbidden private banks and 'bills,' our paper currency, are issued only by the Federal Reserve banks." (*People* v. *Bedilion, supra,* 206 Cal.App.2d at p. 269.) It would indeed lead to an absurd consequence if Federal Reserve notes, the bills which presently constitute the vast bulk of "our paper currency," were

---

[2] Section 411 provides: "Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank."

excluded from the scope of section 480 while bills issued by private banks, whose issuance is generally prohibited, were included.

For the foregoing reasons, we construe section 480's use of the term "bills" to include Federal Reserve notes, and consequently find the evidence substantially supports defendant's conviction for this offense.

## II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Raye, J., and Brown, J., concurred.

A petition for a rehearing was denied April 2, 1996, and appellant's petition for review by the Supreme Court was denied May 22, 1996. Brown, J., did not participate therein.

---

*See footnote 1, *ante*, page 1718.